UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **JESSE A. BREWER,** | : | |
| Plaintiff, | : | CIVIL ACTION NO. 1:21-1291 |
| | : | |
| v. | : | (JUDGE MANNION) |
| | : | |
| **DAUPHIN COUNTY PRISON,** et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

Pending before the court is defendant's motion to dismiss for failure to state a claim, (Doc. 17), and Magistrate Judge Carlson's report and recommendation on defendant's motion to dismiss, (Doc. 24). *Pro se* plaintiff, Jesse Brewer (hereinafter "Brewer"), filed an objection to the report and recommendation of Judge Carlson. (Doc. 29). Defendants filed a response shortly thereafter. (Doc. 31). The matter is now ripe for disposition.

### I. Standard of Review[1]

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of

---

[1] The factual background will not be repeated as Judge Carlson's report and recommendation contains an accurate background of the case.

the report to which objections are made. 28 U.S.C. §636(b)(1); Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. Rieder v. Apfel, 115 F.Supp.2d 496, 499 (M.D. Pa. 2000) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; see also Univac Dental Co. v. Dentsply Intern., Inc., 702 F.Supp.2d 465, 469 (M.D. Pa. 2010) (citing Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31.

## II. Discussion

Judge Carlson first explained that Brewer's amended complaint fails to state an Eighth Amendment claim. Judge Carlson properly explained the law pertaining to the Eighth Amendment claim and §1983 claim. Here, Brewer asserts a claim against Dauphin County. Judge Carlson explained that a local government may only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under §1983." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). The plaintiff must "identify a … 'policy' or 'custom' that caused the plaintiff's injury." Bd. Of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997). If alleging a custom, then it must be "so widespread as to have the force of law." Id., at 404. The plaintiff must also allege that the policy or custom was the "moving force behind the [constitutional] violation." Grayson v. Mayview State Hosp., 293 F.3d 103, 107 (3d Cir. 2002) (citing Brown, 520 U.S. at 404).

Judge Carlson stated the complaint does not contain any allegations that the County put forward policies instructing DCP and its staff to not comply with mitigation strategies for COVID-19. Additionally, the complaint

did not contain any allegations about Dauphin County adopting policies that would be considered the moving force behind a constitutional violation.

Next, Judge Carlson addressed the individual defendants, Warden Briggs and Commissioner Haste. Plaintiff's complaint does not sufficiently connect the defendants to show their personal involvement in the alleged constitutional violation. While plaintiff claims the defendants directly violated masking policies, the COVID-19 protocol, or knowingly affirmed such conduct, Brewer does not state well-pleaded facts showing such conduct occurred. The core assertion by Brewer is that the defendants supervised the employees who violated these policies, but case law is well settled that a plaintiff cannot prove personal involvement of a supervisory defendant simply by alleging they were in charge of the employees or institution that allowed the violation to occur. Saisi v. Murray, 822 F.App'x 47, 48 (3d Cir. 2020) (*per curiam*) (quoting Evancho v. Fisher, 423 F.3d 347, 354 (3d Cir. 2005)).

Judge Carlson stated that Brewer failed to plead facts showing that the defendants had any personal knowledge of the relocations or that staff members were in direct violation of masking policies. Therefore, Judge Carlson concluded that the plaintiff failed to establish well-pleaded facts that demonstrate the defendants are liable as policymakers under §1983, or that

the individual defendants were personally involved in the alleged violation of his constitutional rights.

Next, Judge Carlson explained the plaintiff's burden pertaining to his Eighth Amendment claim. Brewer alleged inadequate medical care in violation of the Eighth Amendment, which requires a showing of deliberate indifference to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976). Brewer must identify evidence that demonstrates both (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference to a serious medical need is defined as the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104.

Judge Carlson specifically addressed the rise of Eighth Amendment claims related to COVID-19 in prison facilities. He explained that courts have rejected Eighth Amendment claims pertaining to COVID-19 when supervisors enacted policies mandating prison officials comply with CDC guidelines in light of the pandemic. Beitler v. City of Allentown, No. 22-104, 2022 WL 768151, at *6 (E.D. Pa. Mar. 14, 2022) (citing Hope v. Warden York Cty. Prison, 972 F.3d 310, 331 (3d Cir. 2020)). The prisoner-plaintiff must show that the government knew of and disregarded an excessive risk to their

health and safety. Hope, 972 F.3d at 329 (citing Nicini v. Morra, 212 F.3d 798, 811 (3d Cir. 2000). Moreover, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Beitler, 2022 WL 768151, at *7 (E.D. Pa. Mar. 14, 2022) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)). A prisoner's claim will fall short of establishing the facility and staff acted with deliberate indifference toward a medical need if the facility took "concrete steps" to mitigate the medical effects of COVID-19. Id. at *14 (citing Hope, 972 F.3d at 331.). Courts must also defer to the opinion of medical experts and prison administrators in determining if deliberate indifference to a medical need occurred. Beitler, 2022 WL 768151, at *13. Neither a failure to eliminate all risk nor an increase in the infection rate will constitute deliberate indifference; the requirement becomes even more onerous if the facility implemented preventative measures. Seyyidi v. Doll, 2020 WL 7040562, at *7 (M.D. Pa. Oct. 23, 2020), report and recommendation adopted, 2020 WL 7034320 (M.D. Pa. Nov. 30, 2020) (quoting Hope, 972 F.3d at 330); Massey v. Estock, 2021 WL 195264, at *5 (W.D. Pa. Jan. 20, 2021). The prison is not required to eliminate all risk of COVID-19 in order to prevent constitutional violations. Beitler, 2022 WL 768151, at *12 (citing Hope, 972 F.3d at 330).

Judge Carlson then provided an array of similar conditions-of-confinement cases where several district courts concluded that COVID-19 could pose a substantial risk of serious harm. See e.g., Peyton v. Cates, 2022 WL 1430752, at *5 (E.D. Cal. May 5, 2022); Mincy v. Wetzel, 2021 WL 5112277, at *3 (M.D. Pa. Nov. 3, 2021), reconsideration denied, 2022 WL 1188860 (M.D. Pa. Apr. 22, 2021); Wilkins v. Wolf, No. 1:20-CV-2450, 2021 WL 1578250, at *7 (M.D. Pa. Apr. 22, 2021); Dixon v. United States, 2020 WL 3249231, at *3 (D.N.J. June 16, 2020). However, even though COVID-19 has been held to be a substantial health risk, prison officials will not be deemed to have been deliberately indifferent even if they had actual knowledge of a substantial risk so long as they responded reasonably, and this holds true even if the harm ultimately occurred. See Shokr v. Leblanc, 2020 WL 8093228, at *3 (M.D. La. Dec. 14, 2020).

Judge Carlson explained the rising tide of cases indicating that prison officials cannot be deemed to have been deliberately indifferent toward the health and safety of inmates if prison officials followed recognized measures to reduce the transmission of COVID-19. (Doc. 24 p. 17-18). Judge Carlson focused upon Mincy v. Wetzel, 2021 WL 5112277 (M.D. Pa. Nov. 3, 2021). In Mincy, the court looked to the policies adopted by the facility and DOC's website explaining the availability of on-site vaccination, the suspension of

in-person visits for approximately fourteen months, and a policy of visitors being given temperature checks, screened for COVID-19, and required to wear personal protective gear. Id. at *3 (citing Department of Corrections, COVID-19 and the DOC, https://www.cor.pa.gov/Pages/COVID-19.aspx (last visited Nov. 1, 2021)).

Judge Carlson then analogized Mincy to Brewer's case. Brewer claims that Dauphin County was not in compliance with the CDC guidelines. However, Judge Carlson looked to Dauphin County's publicly available website regarding their COVID-19 mitigation plans, policies, and procedures. He explained numerous steps the prison took, such as a quarantine period for new intakes, personal protective equipment for prisoners and staff, operational changes to facilitate social distancing, and increased cleaning procedures pursuant to the CDC recommendations. (Doc. 24 p.20-21). Additionally, inmates who tested positive for COVID-19 were seen by medical staff one to two times per day. (Doc. 24 p.21).

Therefore, Judge Carlson concluded that while COVID-19 poses a risk of serious harm and Brewer contracted COVID-19, the prison took sufficient steps to mitigate the spread of COVID-19 (social distancing, mask wearing, facility-wide testing, and limiting the number of people allowed in the facility). (Doc. 24 p. 21). Judge Carlson explained that Brewer alleges he was

transferred while in quarantine, but does not allege that the named defendants knew he was being transferred nor that the prison had a policy to transfer COVID-19 positive inmates. Furthermore, Brewer claims prison staff did not properly wear masks, but again does not allege that the specific defendants were aware of such staff actions. Brewer asserts allegations that amount to an overall dissatisfaction with the way in which the prison handled COVID-19, but as long as prison administrators reasonably responded to the risk of COVID-19, then they will not be held to be deliberately indifferent, even if the harm was ultimately not averted. Shokr, 2020 WL 8093228, at *3. The court agrees with Judge Carlson that Brewer's claims fall short of establishing that the facility and its staff acted with deliberate indifference toward a medical need because the facility took "concrete steps" to mitigate COVID-19. Beitler, 2022 WL 768151, at *14 (citing Hope, 972 F.3d at 331).

Next, Judge Carlson addressed the defendants' entitlement to qualified immunity. Judge Carlson properly explained the applicable law for a claim of qualified immunity. Judge Carlson concluded that Brewer did not demonstrate a clearly established right in the context of COVID-19 and the Eighth Amendment. He noted that several courts have found no established right in the COVID-19 context due to the evolving nature of the pandemic. (Doc. 24 p.25-26). Brewer argued that COVID-19 changed a lot of laws and

prison officials are trying to use technicalities to escape liability. (Doc. 21 p.3). However, Judge Carlson reasoned that COVID-19 is still a novel virus and administrators took reasonable steps to mitigate the spread of the virus.

Brewer filed objections to Judge Carlson's report and recommendation. First, Brewer argues he did allege policies or customs created by the defendants or that the defendants allowed the continuance of such policies. He points to the transfer of prisoners while in quarantine, having more than ten people in eating areas and congregating in hallways, and bringing in new inmates off the street directly into the population.[2] These claims were directly addressed by Judge Carlson. Brewer must allege that Dauphin County had policies in place to encourage the transferring of prisoners while in quarantine, having more than ten people in eating areas and congregating in the hallways, and bringing new inmates in directly off the street without quarantine. However, Brewer does not establish any well-pleaded facts to indicate Dauphin County had such a policy or custom. As to

---

[2] Brewer additionally alleges gross negligence in the supervision of the subordinates, but this is a new claim only raised within his objection. As Judge Carlson explained, there must be some evidence of knowledge and approval of a subordinate's actions in order for a supervisor to be held liable. O'Connell v. Sobina, 2008 WL 144199, at *21 (W.D. Pa. 2008) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)).

the individual defendants, Brewer establishes no facts to indicate they had any personal involvement in establishing such policies or customs.

Next, Brewer argues that the individual defendants put forward policies that in turn were carried out by their staff. Brewer asserts that the individuals knew or should have known that the policies they put into place would result in a constitutional violation of his rights. (Doc. 29 p.4). However, Brewer identifies no such policy or custom that the defendants put into place that resulted in a violation of his constitutional rights. To the contrary, defendants instituted numerous policies that sought to mitigate the spread of the COVID-19 virus within the prison. (Doc. 24 p.20-21). Brewer merely asserts a conclusion that supervisors were indifferent to the actions of their staff without establishing any facts that the defendants had knowledge and approved of their subordinates' actions.

Lastly, Brewer challenges the defendants' eligibility for qualified immunity. Brewer fundamentally misunderstands qualified immunity. The doctrine of qualified immunity protects public officials from being required to pay civil damages as long as "their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." Bland v. City of Newark, 900 F.3d 77, 83 (3d Cir. 2018) (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015)). In determining if an official is entitled

to qualified immunity for a §1983 claim, a court must decide (1) whether the official violated a constitutional right and, if so, (2) whether the right was clearly established. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). As Judge Carlson explained, several courts have found no established constitutional right in the COVID-19 context due to the evolving nature of the pandemic. (Doc. 24 p.25-26). COVID-19 is a novel virus that continues to require evolving standards and practices in order to mitigate its effects. The prison established reasonable policies and procedures that sought to mitigate the effects of the virus. Brewer argues that the policies themselves violate his constitutional rights, but he does not identify any specific policy which causes such a result.

Lastly, Brewer argues that the one case identified by Judge Carlson, <u>Maney v. Brown</u>, 2020 WL 7364977, at 6* (D. Or. Dec. 15, 2020), goes against a finding of qualified immunity because inmates had "a clearly established right to protection from a heightened exposure to COVID-19, despite the novelty of the virus." However, two other district courts have found to the contrary even after <u>Maney</u>. <u>Ryan v. Nagy</u>, 2021 WL 6750962, at *9 (E.D. Mich. Oct. 25, 2021); <u>Ross v. Russell</u>, 2022 WL 767093, at *14 (W.D. Va. Mar. 14, 2022) (granting qualified immunity where "[t]he COVID-19 pandemic was new and unusual, and there was ongoing and changing

guidance from health officials at both the state and federal levels"). Maney differs from the current situation because there were fact issues in relation to treatment and testing protocols as well as the prison not complying with most of the guidelines imposed on it. Maney, 2020 WL 7364977, at *5-7.

Upon review, the court agrees with the sound reasoning which led Judge Carlson to his conclusions. As such, the court will adopt the report and recommendation as the decision of the court.

An appropriate order will follow.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: November 10, 2022**
21-1291-01